## LANE ET AL. *v.* WHITEHOUSE.

PLEADING.—*Failure of Consideration.—Answer.—*To a suit upon a promissory note for three hundred and fifty-five dollars, an answer alleging that it was given in part payment for a saw and saw-mill, represented to be sound and perfect, and claiming a failure of consideration on account of a latent defect in pulley tighteners, of the value of fifteen dollars, causing them to break, and by breaking, to destroy and injure other parts of the machinery to the value of three hundred and eighty-five dollars, but not showing that the pulley tighteners were a part of the mill purchased, and that they broke and caused the injury complained of without the fault of the defendant, was held bad.

From the Warren Common Pleas.

*W. P. Rhodes* and *T. McDugall,* for appellants.

OSBORN, J.—This was an action upon a promissory note given by the appellee to the appellants for three hundred and fifty-five dollars. The complaint is in the usual form. The appellee answered, admitting the execution of the note and alleged that the consideration had failed, in this, that the note was given in part payment for a saw and saw-mill sold to him by the appellants, who warranted that the saw and saw-mill were sound and perfect and in perfect running order; that he, relying upon such representations and believing them to be true, purchased the saw-mill of the appellants; that the saw and saw-mill were shipped to him by the appellants from Cincinnati, Ohio, and were not seen by him until they arrived in Attica, which was after the delivery of the note sued on to the appellants; that they arrived in apparent good order and were carefully put up; that he commenced running the mill, but by reason of some latent defect, the pulley tighteners broke and were totally destroyed, being of the value of fifteen dollars, and ruined and destroyed and broke to pieces the main belt, of the value of eighty-five dollars, and rendered it totally worthless, and strained the saw-mill and machinery of the mill, and strained the engine of the appellee, injuring it to the amount of three hundred dollars; that the saw would not work until it was adjusted, at a cost of twenty-five dollars. To this answer

the appellants demurred, on the ground that it did not contain sufficient facts, etc. The demurrer was overruled, and they excepted; a reply of general denial was filed, and the issues of fact submitted to a jury for trial, who rendered a verdict for the appellee. A motion for a new trial was filed and overruled, and an exception taken, and final judgment rendered against the appellants. The motion for a new trial and assignment of errors present the questions discussed.

The facts alleged in the answer do not show a failure of consideration of the note. The most favorable construction given to the answer only shows a defect in the pulley tighteners of fifteen dollars, and a defect in the saw, which cost twenty-five dollars to remedy, making a total of only forty dollars. The note is for three hundred and fifty-five dollars. All the other alleged damages resulted from the breaking of the pulley tighteners and do not tend to show a failure of consideration of the note. If they can be made available for the appellee, it must be as a counter-claim, attempting to set up a cause of action against the appellants.

A counter-claim is defined to be "any matter arising out of, or connected with the cause of action, which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages." 2 G. & H. 91, sec. 59.

A counter-claim setting up a cause of action against the plaintiff must state facts sufficient to constitute a cause of action in favor of the defendant against the plaintiff, or it will be subject to a demurrer. *Campbell* v. *Routt,* 42 Ind. 410. It must also show that the facts stated as constituting the cause of action arise out of, or are connected with, the cause of action stated in the complaint.

The facts alleged in the pleading under consideration are not sufficient to constitute a cause of action against the appellants. The allegation is, that he bought of them "a saw and saw-mill;" that "by reason of some latent defect, the pulley tighteners broke and ruined and destroyed and

broke to pieces the main belt;    *    *    *    and strained the saw-mill and machinery of said mill and strained the engine," etc.; but it is not alleged that the pulley tighteners which broke and caused the damage constituted a part of the mill purchased of the appellants.   It is not alleged that it was properly used and broke without the fault of the appellee.   The pulley tighteners might be defective, and yet such defect might be so slight, that if properly used they would not break.   It should have been alleged that they constituted a part of the mill furnished, and that they broke without the fault of the appellee.   It is not shown that the breaking of the pulley tighteners would ordinarily or naturally endanger the main belt, the mill, or the machinery, or what connection the tighteners had with the property injured. Nothing is alleged showing that the parties could have contemplated the alleged damage resulting from breaking the tighteners.   The allegations only attempt to show a sale with a warranty, a breach of the warranty, and an injury to other property of the purchaser by reason of the breach.

The case is not like *Page* v. *Ford*, 12 Ind. 46.   In that case, Armstrong, Drake & Co. manufactured a steam engine and boiler for Ford, to be used in a saw-mill, of which they had notice, and made them expressly for that purpose; the boiler was worthless in consequence of defects in materials and workmanship; owing wholly to such defects, it burst and was destroyed and injured Ford's mill; Ford had no knowledge of the defects, etc.   Considering the particular facts in that case, after referring to several decisions, the court said, on p. 52: "Whether all parts of the various decisions referred to should be held as law or not, we may safely say, that there is enough that we do approve, to enable us to determine, in the case at bar, that if the engine, etc., proved unsound and unfit for the purpose to which it was to be applied; and if, in attempting to apply it, as purposed, the purchaser should, without fault upon his part, in consequence of such unsoundness and unfitness, suffer damage by the destruction of that kind of property which it was

reasonable that the parties to the contract contemplated would be necessarily placed in close proximity to such machinery, we are unable to perceive any good reason why such injury should not be viewed as the natural and legitimate result of the breach of the warranty."

The allegations in the answer or counter-claim, in the case at bar, do not bring this case within the reasoning of that. The pleading seems to have been prepared somewhat hastily, as pleadings must sometimes be, under our system of practice requiring issues to be formed during the session of court, and when the mind and time of the pleader may be occupied in the trial of causes. It is a case where great care and particularity of allegation is required. Facts should be stated showing that the parties might be supposed to contemplate the damages complained of in case of the breach of the warranty. Such allegations are not in the pleading under consideration.

Other questions are discussed, but as they grow out of the answer or counter-claim, which is bad, they are not properly before us, and hence we decline to pass upon them.

The judgment of the said Warren Common Pleas is reversed, with costs; and the cause is remanded, with instructions to the court below to sustain the demurrer to the answer, and for further proceedings, etc.