# MESKER v. BISHOP, ADMINISTRATRIX.

[No. 8,100. Filed December 17, 1913. Rehearing denied June 10, 1914.]

1. APPEAL.—*Assignment of Errors.—Form.—Effect.*—Where it appears that the complaint consisted of but one paragraph at the time a demurrer thereto was filed and overruled and exception taken, and that thereafter a second paragraph was filed to which a demurrer was also filed and overruled, and appellant assigned error "in overruling the demurrer to the complaint", and also assigned error in overruling the demurrer to the second paragraph of complaint, the first assignment, though using the word "complaint" without qualification, did not present the sufficiency of the complaint as a whole, since there could be no doubt as to the identity of the ruling intended to be assigned as error, and that it questions the ruling on the demurrer to the original or first paragraph of complaint. p. 459.

2. APPEAL.—*Assignment of Errors.—Requisites.*—As a general rule appellant is confined to his assignment of errors as written, and to be available each error assigned must be so complete, specific and certain, as to indicate clearly the identity of the particular ruling upon which the error is predicated. p. 460.

3. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Complaint.*—A complaint for the death of one who was employed to assist in the construction of a building, which alleged that decedent had no knowledge of the defective condition of the floor, that the defect and danger was hidden from his view, that the planks did not rest on or lap on the joists, and that when decedent was in the performance of his duty, looking upward and walking on such floor to adjust a guy rope, he stepped where such planks did not rest on and lap on the joists,

whereby they tilted and caused him to fall to the floor below, sufficiently negatived assumption of risk.   p. 460.

4. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Complaint.*—In an action for the death of a servant by falling through the floor of a building which he was assisting to construct, under a showing made in a paragraph of complaint that the floor was put down so as to be safe, and was used by decedent and other employes and found to be safe, that thereafter without decedent's knowledge the defendant caused an opening to be made, which was later covered by replacing the boards in such manner as not to indicate that the floor had been disturbed, decedent can not be held to have assumed the risk of danger that would follow from stepping on such boards, since it must follow as a reasonable inference from the facts alleged that decedent did not know, and by ordinary observation and care could not have known of such danger.   p. 461.

5. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.*—In an action for the death of a servant by falling through the floor of a building which he was assisting to construct, a paragraph of complaint alleging that defendant caused an opening to be made in the floor and later replaced the boards in such manner as to render the place dangerous, and showing that decedent's work required him to be at the place where he was injured, sufficiently showed that defendant knew the condition of the floor, and, though alleging that the injury occurred to decedent "while in the line of his duty", was not objectionable as failing to allege that decedent's employment required him to be where he was when injured, since the words quoted, in the connection in which they were used, were equivalent to an averment that the injury occurred to decedent "while in the performance of the work of his employment".   pp. 461, 464.

6. PLEADING.—*Complaint.—Inferences.*—Inferences reasonably arising from allegations made may be indulged in aid of a complaint. p. 463.

7. MASTER AND SERVANT.—*Injuries to Servant.—Complaint.—Theory.—Appeal.*—Where it appears that the parties to an action for the wrongful death of a servant treated the complaint as proceeding under the common law, the court will so treat it in determining its sufficiency on appeal, notwithstanding it discloses an intention of the pleader to state a cause under the statute. p. 464.

8. EXECUTORS AND ADMINISTRATORS.—*Appointment.—Collateral Attack.—Fraud.—Cross-Complaint.—Sufficiency.*—In an administratrix's action to recover for the wrongful death of her decedent, a cross-complaint by defendant alleging a release and settlement of all claims against it for such death by decedent's widow before

her appointment as administratrix, that there were no assets to be administered upon, and that the procuring of plaintiff's appointment was a fraud upon the jurisdiction of the court and ought to be revoked, even if such a collateral attack were permissible, was insufficient, in the absence of allegations showing any fraudulent intent or misrepresentation of fact made by plaintiff and relied on by the court in making such appointment, or showing a constructive fraud on either the defendant or the court, since fraud is never presumed but must be alleged and proved. p. 465.

9. PLEADING.—*Cross-Complaint.*—*Requisites.*—A cross-complaint is in effect a complaint and must conform to the rules governing a complaint, and hence is bad on demurrer if it does not state facts sufficient to constitute a cause of action. p. 465.

10. EXECUTORS AND ADMINISTRATORS.—*Appointment.*—An administrator may be appointed for the purpose of prosecuting an action for the death of one caused by the wrongful act or omission of another, and the right to letters does not depend upon the existence of tangible assets to be administered. p. 466.

11. EVIDENCE.—*Weight and Sufficiency.*—*Appeal.*—The court on appeal will not weigh conflicting evidence. p. 466.

12. MASTER AND SERVANT.—*Injuries to Servant.*—*Duty of Master.* —*Liability.*—*Evidence.*—In an action against an employer for the death of a servant, who, while assisting in the construction of a building, fell through an opening in the floor, of which he had no knowledge and which had been covered by loose boards, the ends of which did not rest on the joists, the defendant was liable, where the evidence showed that the opening was made at his direction and for his convenience, since the master's duty to furnish a safe place to work is continuing and nondelegable, and the coservants of decedent, in relaying the floor, were performing duties for the master in preparing a place for decedent to occupy in the performance of other work of a different character, and their negligence was his negligence. p. 467.

13. APPEAL.— *Questions Reviewable.*— *Instructions.*— *Briefs.*— Although instructions are to be considered as a whole and not singly or fragmentarily, appellant's failure to set out in his brief any of the instructions, except those as to which he urges error, will not prevent a consideration of such alleged errors, since where error is thus pointed out, it becomes the duty of the appellee to show that it was cured by other instructions given. p. 467.

14. MASTER AND SERVANT.—*Injuries to Servant.*—*Duty of Master.*— *Instructions.*—While an instruction that it is the master's duty to his employes to provide safe places for them to work, is open to the objection that the master is thereby made an insurer of the safety of the employe, no harm resulted from its being given, in

view of other instructions properly defining defendant's duty and the degree of care required of him in the matter of furnishing a safe place to work. p. 468.

15. APPEAL.—*Review.*—*Harmless Error.*—*Instructions.*—Error in an instruction defining a master's duty to his employe so as to make him an insurer of the employe's safety, is not cause for reversal, where it is apparent from other instructions given that the jury was not misled thereby. p. 469.

16. APPEAL.—*Review.*—*Instructions.*—*Technical Objections.* — Error in instructions, of the technical character contemplated by §407 Burns 1914, §398 R. S. 1881, is not cause for reversal. p. 469.

17. TRIAL.—*Instructions.*—*Refusal.*—The refusal of an instruction which invades the province of the jury is proper. p. 469.

18. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*— The sustaining of a demurrer to a cross-complaint, even if erroneous, was harmless where defendant set up substantially the same facts by way of answer and had the benefit of all the evidence that could have been admissible under the cross-complaint, and the verdict was for plaintiff on the issue tendered by such answer. p. 470.

19. EVIDENCE.—*Weight and Sufficiency.*—*Appeal.*—While the question of the sufficiency of the evidence is for the court on appeal, its weight is for the court and jury trying the cause. p. 470.

20. MASTER AND SERVANT.—*Injuries to Servant.*—*Release of Claim.* —*Evidence.*—In an action for the death of a servant, where defendant pleaded a release of the claim by decedent's widow, evidence showing that the defendant's agents represented to her that they would make her a present of fifty dollars and pay the hospital and doctor bills, and that she did not understand when she signed the paper that she was releasing her claim, but that she thought she had to sign in order to get the fifty dollars, was not sufficient to preclude an inference by the jury of a want of consideration for the signing of such release. p. 471.

21. MASTER AND SERVANT.—*Injuries to Servant.*—*Release of Claim.* —*Effect.*—In an action by an administratrix for the wrongful death of her decedent, a release signed by decedent's widow, even if valid, could not operate as a bar to the action as against interests of the daughter who signed the release later and without consideration. p. 471.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by Jane Bishop, administratrix of the estate of Lawrence W. Bishop, deceased, against George L. Mesker. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Elmer E. Stevenson* and *Iglehart, Taylor & Heilman,* for appellant.

*Thomas W. Lindsey, Charles P. Bock* and *Henry W. Kamman,* for appellee.

HOTTEL, P. J.—This is an action to recover damages for death of Lawrence W. Bishop, deceased, alleged to have been caused by appellant's negligent failure to furnish the decedent a safe place in which to work. The original complaint was in one paragraph. A demurrer thereto for want of facts was overruled. Appellant then filed a cross-complaint, and an answer setting up a release and settlement. A demurrer for want of facts to the cross-complaint was sustained, and a like demurrer to the answer was overruled. Appellee then filed a second paragraph of complaint, to which a demurrer for want of facts was also overruled. To this paragraph of complaint appellant filed a general denial and an affirmative answer pleading said release and settlement. A demurrer to the second paragraph of answer was overruled, and appellee then filed a general denial and an affirmative reply in two paragraphs to the second paragraph of answer to each paragraph of complaint. A demurrer was filed to each of the affirmative paragraphs of reply which was sustained as to the second paragraph and overruled as to the third paragraph. Such third paragraph of reply alleged a want of consideration for the execution of the alleged release. There was a change of venue to Posey County where there was a jury trial which resulted in a verdict in favor of appellee for $2,000. Appellant filed a motion for a new trial which was overruled and judgment was then rendered on the verdict.

The errors assigned and relied on for reversal are: (1) error "in overruling the demurrer to the complaint"; (2) error in sustaining demurrer to cross-complaint; (3) error in overruling demurrer to second paragraph of complaint; (4) error in overruling demurrer to third paragraph of reply; and (5) error in overruling

2.   motion for a new trial.   Appellee contends that the first error assigned, questions the sufficiency of the complaint as a whole.   It is true that the word "complaint" is used without qualification, but it appears that at the time the first demurrer was filed and overruled and exception taken, there was only one paragraph of complaint on file.   Another paragraph, denominated a second paragraph, was afterwards filed.   It is the general rule, and one ·which has been strictly adhered to, that the appellant is confined to his assignment of errors as written, and that each error assigned must be so complete, specific and certain, as to clearly indicate the identity of the particular ruling upon which the error is predicated.   §696 Burns 1914, §655 R. S. 1881; Rule 4 of Supreme and Appellate Court Rules; *Walter A. Wood, etc., Mfg. Co.* v. *Angemeier* (1912), 51 Ind. App. 258, 99 N. E. 500 and authorities there cited.   In the present case there can be no doubt as to the identity of the ruling intended to be assigned as error.   *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 83 N. E. 369, 17 L. R. A. (N. S.) 542, 14 Ann. Cas. 375.   By such alleged error appellant questions the ruling on the demurrer to the original, or first paragraph of complaint.

It is urged against this paragraph that the facts alleged therein show that the decedent assumed the risk.   Each of the paragraphs of complaint alleges facts showing that

3.   decedent was employed by appellant to assist in the construction of a four-story building, and that, while working thereon, he fell through an opening in the floor in the fourth story and received injuries from which he afterwards died.   The averments of the paragraph in question particularly applicable to the objection urged against it are as follows: "Said floor was left defective, *without the knowledge of plaintiff's intestate, in this:* * * * the planks or boards did not rest on, or lap on the joists, and when plaintiff's intestate was in the performance of his duty, looking upward, as he had to do, to said guy rope, and

going from one part of said floor to adjust the said guy rope, * * * (he) stepped on said defective floor, where said boards or planks did not rest on and lap on the joists, and could not be seen by (him) * * * and the said boards or planks tilted, and plaintiff's intestate fell to the floor below, receiving the fatal injury from which he died. * * * Plaintiff's intestate had *no knowledge of the insecure and unsafe condition of the said floor where he was working*, as the same was hidden from view and the danger was concealed from, *and therefore he did not and could not know that said* floor was defective, through which he fell. * * *'' These facts were admitted by the demurrer and are sufficient to negative assumption of risk. *Federal Cement Tile Co.* v. *Korff* (1912), 50 Ind. App. 608, 612, 97 N. E. 185, and cases cited; *Tennis Co.* v. *Davis* (1910), 46 Ind. App. 436, 92 N. E. 986.

The chief objections urged against the second paragraph of complaint are in substance as follows:  That it does not show that the decedent had no knowledge of the defective floor, and that appellant had knowledge; that it is alleged that the place appeared safe to the "*ordinary observation of man*", but that it is not alleged that it appeared safe to appellee's decedent; that it is nowhere alleged that appellee's decedent did not know of the danger; that it is not alleged that it was necessary for decedent to walk over that part of the floor in which the opening was made through which he fell; that no facts are alleged showing that the appellant knew, or could reasonably have anticipated that the decedent would go where he might fall through such opening.

The averments of the pleading furnish a sufficient answer to these objections.  Such averments important for the purpose of determining the validity of said objections are in substance as follows:  On May 29, 1906, and for several months prior thereto, decedent was in the employ of appellant assisting in the erection of said building and in addi-

tion to other general carpenter work, was employed by appellant to handle a guy rope used in and about the erection of the building. On said day the decedent was at work in the line of his duty on the fourth floor of said building. Prior to that day appellant had placed a temporary floor in the fourth story of the building, which he intended for the use of decedent and other employes, while engaged in the work upon such story of said building, and the decedent and others did use and occupy such floor. This floor was about fifty feet above the ground, and between it and the ground there were joists and other beams used for the purpose of supporting the floors to be laid thereon in the construction of said building. The fourth floor, had been used and occupied by the decedent and other employes of appellant for several days prior to May 29, 1906, and was during all the time, except the time hereinafter described, safe for such use. Such floor was first laid on joists provided for that purpose, and the boards constituting the fourth floor, were first laid so that the ends thereof rested securely upon joists or other boards. Just before noon on the day that the decedent received his injuries, the appellant, desiring to hoist doors, window frames and other material to such floor, caused such floor to be changed and a part thereof removed and an opening made therein through which he hoisted such frames and material to such floor. Decedent did not know that such opening had been made or that any part of said floor had been removed. After such material had been hoisted to such floor, appellant negligently relaid that part of such floor, so that the ends of the boards had no secure foundation on which to rest, and so that any weight on the end would cause such boards to tilt up, but so that they "appeared safe to the ordinary observation of man". Immediately after noon on said day, the decedent in the line of his duty, was handling the guy rope to the derrick on the fourth floor, "and in performing his duties under his employment it was necessary to and the decedent did walk

around over said floor and walked on that part of such floor that had been negligently relain'' and left by the appellant unsupported and apparently safe, and the weight of the decedent caused him to fall through the floor, striking the joists below, and to the ground, and so wounded and injured him, that he afterwards died. If the floor of the fourth story was put down so as to be safe in the first instance, as this paragraph alleges, and was used by appellant's employes, decedent included, and found to be safe by decedent, as is also alleged, in effect, and was afterwards, by appellant, without decedent's knowledge, rendered unsafe by cutting an opening therein, which he later covered by replacing the boards, so taken out, in such a manner as not to indicate that the floor had been disturbed, but to indicate its original safety, we think it must follow that decedent did not assume the risk of the danger that would necessarily follow from stepping on such relaid boards. The purpose of, and necessity for, an averment in such cases of facts showing that decedent did not have knowledge actual or constructive, of the dangerous condition of his place of work which caused his death, is to avoid the assumption of risk. The averments above indicated in the paragraph of complaint under consideration, are, for such purpose, the equivalent of such an averment of lack of knowledge both actual and constructive. It follows as a reasonable, if not a necessary, inference from such averments that he did not know of the condition of the floor when he stepped on it and fell to his death, and that, by ordinary observation and care, he could not have known of such danger. The later decisions of

6. our Supreme Court authorize the inference indicated in favor of such paragraph *(Domestic Block Coal Co.* v. *DeArmey* [1913], 179 Ind. 592, 100 N. E. 675, 102 N. E. 99), and with such inference indulged in its favor, it is not open to the first objection above indicated. *Chicago, etc., R. Co.* v. *Hamerick* (1912), 50 Ind. App. 425, 96 N. E. 649; *Tennis Co.* v. *Davis, supra; Federal Cement Tile Co.* v.

*Korff, supra.* This paragraph shows that appellant knew the condition of said floor because it is alleged in effect, that he, for his own purpose, caused the condition to be created. It also appears that decedent's work required him to be where he was when injured. In view of the other averments with which they are connected, the words ''in the line of his duty'' are not of controlling influence. The connection in which they are used, shows conclusively that they are used in the sense of ''in the performance of the work of his employment,'' and, hence with the other words in the same sentence, are sufficient to show that his employment required him to be where he was when injured. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247, 254, 71 N. E. 218, 660; *Chicago, etc., R. Co.* v. *Hamerick, supra.* There are averments in this paragraph which would indicate that the pleader intended to bring it within the act of 1903 (Acts 1903 p. 151, §3859 Burns 1914), in which case there would be no assumption of risk in the case. It seems, however, that the parties, and the trial court, treated both paragraphs of the complaint as proceeding under the common law and hence we have so treated them in considering their sufficiency. *Southern R. Co.* v. *Crone* (1912), 51 Ind. App. 300, 99 N. E. 762; *Euler* v. *Euler* (1914), 55 Ind. App. 547, 102 N. E. 856, and authorities there cited.

We next consider the questions presented by the ruling on the demurrer to the cross-complaint. The pleading avers, in substance, a release and settlement of all claims against appellant for the death of the decedent, prior to the bringing of this action, and sets out a copy of a release purporting to be executed by decedent's widow, Jane Bishop, who was afterwards appointed administratrix of his estate and as such brought this suit, and Mary Dills, sole heirs at law of the decedent. It also avers ''that no assets existed in said estate upon which letters of administration might be issued by this court, but the said letters of administration set out in the

complaint were issued on the 22nd day of April, 1908, for the sole purpose of bringing this action and prosecuting the same for the use of the said Jane Bishop and Lora Dills, daughter of the said Mary Dills, the said Mary Dills having since the payment of said money and the execution of said release departed this life, leaving as her sole heir at law the said Lora Dills, but the said Lora Dills claims wholly in this case under and through her said mother Mary Dills, and is bound by all the acts of her said mother. * * * Said parties, sole beneficiaries as aforesaid, of the said right of action, in good faith, and without fraud, executed said release to the defendant for the consideration aforesaid, and no reason exists for the bringing of this suit, or the maintaining of any administration whatever of said estate, other than the attempt to compel the defendant to pay the expenses and costs of litigation in collecting moneys to be paid to the said parties who have received the same, and for executing the said release therefor; and defendant avers that the procuring by the plaintiff of the issuance of letters of administration under such circumstances were and are a fraud upon the jurisdiction of this court, and all letters of administration, issued in said estate ought to be revoked and set aside, for which the defendant prays, and he prays for all other proper relief."

We are of the opinion that the validity of appellee's appointment as administratrix cannot be questioned, or her letters set aside in the manner here attempted. *Mc Gehee* v. *McCarley* (1899), 91 Fed. 462, 33 C. C. A. 629; *McGehee* v. *McCarley* (1900), 103 Fed. 55, 44 C. C. A. 252; *McCooey* v. *New York, etc., R. Co.* (1902), 182 Mass. 205, 65 N. E. 62; *Emery* v. *Hildreth* (1854), 68 Mass. 228; *Douthit* v. *Smith* (1880), 69 Ind. 463, 465, 467. Assuming, however, without deciding, that appellant might, by a cross-complaint, properly tender such a collateral issue, the averments of his cross-complaint

are not sufficient to entitle him to such affirmative relief. A cross-complaint, like a counterclaim, is, in effect, a complaint and must conform to the rules governing a complaint. *Lane* v. *Whitehouse* (1874). 46 Ind. 389; *Branham* v. *Johnson* (1878), 62 Ind. 259; *Tron* v. *Yohn* (1896), 145 Ind. 272, 43 N. E. 437. Hence, if the so-called cross-complaint does not state facts sufficient to constitute a cause of action against appellee as the administratrix it is bad on demurrer. *Woodruff* v. *Garner* (1866), 27 Ind. 4, 89 Am. Dec. 477; *Judy* v. *Woods* (1912), 51 Ind. App. 325, 99 N. E. 792, and cases cited. Appellant seeks by such cross-complaint to have the appointment of appellee as administratrix set aside for fraud. Fraud is never presumed but must be alleged and proven. No acts are here pleaded showing any fraudulent intent or misrepresentation of fact made by appellee and relied on by the court in making such appointment, nor are the facts sufficient to show constructive fraud on either appellant or the court.

An administrator may be appointed for the purpose of prosecuting an action for the death of one caused by the wrongful act or omission of another. §285 Burns 1914, Acts 1899 p. 405; *Toledo, etc., R. Co.* v. *Reeves* (1894), 8 Ind. App. 667, 35 N. E. 199. And the right to letters of administration does not depend upon the existence of tangible assets to administer. *Ex parte Jenkins* (1900), 25 Ind. App. 532, 58 N. E. 560, 81 Am. St. 114. Hence, the demurrer to such cross-complaint was properly sustained.

The first two specifications in appellant's motion for a new trial are, that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. They will be considered together. It is a well-settled rule that this court will not weigh the evidence when conflicting. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1911), 175 Ind. 161, 178, 92 N. E. 733, 93 N. E. 850; *Beatson* v. *Bowers* (1910), 174 Ind. 601, 607, 91 N. E. 922; *Indianapolis, etc.,*

*Traction Co.* v. *Brennan* (1910), 174 Ind. 1, 2, 3, 87 N. E. 215, 90 N. E. 65, 68, 91 N. E. 503, 30 L. R. A. (N. S.) 85.

Appellant cites numerous authorities relating to the duties of the master to his servant, to use reasonable care to furnish him a safe place to work, including the general rule and some of its modifications. Without separately discussing each of appellant's several contentions, it is enough to say that there was evidence tending to show that the opening in the floor through which decedent fell, was made at appellant's directions and for his convenience. The duty of the master in respect to furnishing a safe place to work is continuing and nondelegable, and the coservants of the decedent in this case, in relaying the floor, were performing duties for the master in preparing a place for appellee's decedent to occupy in the performance of other work of a different character, and hence their negligence is the negligence of the master. ''The full test of liability is not the condition of the place, nor the machinery at the instant of the injury, but the character of the duty, the negligent performance of which caused the injury. Was it a duty of construction, preparation or repair, or was it a duty of operation? *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, [66 N. E. 886] ; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689 [68 N. E. 262], 63 L. R. A. 460; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1904), 163 Ind. 247; *Miller* v. *Southern Pac. R. Co.* (1891), 20 Or. 285, 26 Pac. 70.'' *Chicago, etc., R. Co.* v. *Barker, supra.*

It is next insisted that the trial court erred in giving, and refusing to give, certain instructions. The particular instructions on which the errors relied on are predicated, are alone set out in appellant's brief, and appellee asserts that appellant is not entitled to a consideration of such alleged errors for the reason that the remaining instructions or their substance, should have been set out in such brief. Rules of court are adopted for the orderly dispatch of the business before the court, and should

not be used as a means to defeat the ends of justice. While the instructions are to be considered as a whole and not singly, or fragmentarily, yet "the general rule is that where the trial court has erred in charging the jury it must clearly appear from the record on appeal, that the error did not prejudice the complaining party." *Monongahela River, etc., Co.* v. *Hardsaw* (1907), 169 Ind. 147, 151, 81 N. E. 492. This would seem to place upon appellee the burden of showing that an erroneous instruction was harmless, and it has been expressly held that where appellant sets out in his brief the instructions complained of as erroneous, but fails to set out the instructions in full, that appellee must show that such instructions, if erroneous, were cured by other instructions given. *Simplex, etc., Appliance Co.* v. *Western, etc., Belting Co.* (1909), 173 Ind. 1, 4, 88 N. E. 682.

Objection is urged against instruction No. 2 given at the request of appellee. That part of this instruction objected to is as follows: "It is the master's duty to his employes to provide safe places for them to work. This duty is a continuing one and requires him to use ordinary care to keep them safe." The objection urged to this instruction is that, by it, the jury was told that the master owed a duty to the servant to furnish a safe place, and that thereby the master was made an insurer of the safety of appellee's decedent. While the entire instruction is an exact copy of the language of the Supreme Court in the case of *Nall* v. *Lousiville, etc., R. Co.* (1891), 129 Ind. 260, 28 N. E. 183, 611, it, like many other statements found in the opinions of appellate tribunals, is not to be commended as an instruction. Such statements may be entirely proper in the connection in which they are made, and yet, when severed and set apart from such connection, may not furnish a safe guide to a jury in its consideration of some other case. The master is only required to use reasonable care to furnish his employe a safe place to work, and hence the part of the instruction quoted, is open to appellant's objection, but when

considered in connection with other instructions which properly defined appellant's duty and the degree of care required of him in the matter of furnishing such place to work, we think it apparent that no harm could have resulted to appellant in the giving of such instruction. *Baltimore, etc., R. Co.* v. *Trennepohl* (1909), 44 Ind. App. 105, 87 N. E. 1059; *Brown* v. *Anderson* (1883), 90 Ind. 93.

By instruction No. 3, given at request of appellee, the jury was told that "the duty of the master to exercise ordinary care and skill concerning the place in which the servant is required to work, is a continuing duty, and the master cannot escape responsibility for failure to keep such place safe by delegating the performance of the duty to another, and the servant may rely on the fact that the master has performed his duty in that regard until he has information otherwise." The same objection is made to this instruction that was made to instruction No. 2 just considered, and assuming without deciding that it is open to such objection, for the reason there indicated, we are of the opinion that the jury was not misled by it.

An objection is also made to instruction No. 4 given at appellee's request, but it is clearly of that technical character contemplated by §407 Burns 1914, §398 R. S. 1881, and hence, should not be permitted to work a reversal of the judgment below. Finally it is insisted by appellant that the court erred in refusing to give instruction No. 6 tendered by it. The latter part of such instruction was not proper, in that it invaded the province of the jury and it was therefore properly refused.

We find no reversible error in the record and the judgment is therefore affirmed.

## On Petition for Rehearing.

HOTTEL, J.—In a petition for rehearing appellant very earnestly urges that this court has overlooked some material considerations which oversight has led it into error in its opinion.

It is first insisted that the court erred in holding that no error resulted from sustaining a demurrer to its cross-complaint. We are satisfied with the conclusion reached and announced on this question in the original opinion, but we might add that we are unable to see how appellant could have been harmed by such ruling of the trial court, even if erroneous. An answer setting up substantially the same facts was very properly held sufficient against a demurrer, and appellant, by way of defense, had the full benefit of all the evidence beneficial to it that could have been admissible under its cross-complaint. The verdict of the jury was necessarily against appellant on the issue tendered by such answer and appellee's reply thereto, otherwise there could have been no verdict in appellee's favor. The finding by the jury against appellant on its answer, would necessarily prevent it from obtaining the affirmative relief asked in its cross-complaint.

This brings us to what we regard as the most serious question in the case, viz., Was there sufficient evidence to show a consideration for the release set up in such answer? The affirmative reply to this answer averred in substance that neither at the time of its execution and delivery, nor before nor since that time, was any consideration for such release received by Jane Bishop or Mary Dills, or either of them, from the appellant or any other person. It is very earnestly insisted by appellant that this court in the original opinion treated this question as one of the weight of the evidence, when in fact it was a question of the sufficiency of the evidence. We recognize the distinction contended for by appellant to the effect that the question of the

weight of the evidence is for the jury and trial court, while its sufficiency to sustain the verdict of the jury, or the decision of the trial court, is for this court. *Habbe* v. *Viele* (1897), 148 Ind. 116, 121, 45 N. E. 783, 47 N. E. 1; *Wright* v. *Bertiaux* (1903), 161 Ind. 124, 129, 130, 66 N. E. 900; *United States Cement Co.* v. *Whitted* (1910), 46 Ind. App. 105, 107, 90 N. E. 481, and cases cited. We cannot say, however, in this case, that there was no evidence from which the jury might not have inferred that the release in question was given without consideration. The evidence on which appellant relies shows that Jane Bishop was told when she signed the release that she had no cause of action, but that they, the persons representing appellant, would make her a present of $50, and would pay the hospital and doctor bills and, that if she did not sign it she would have to pay these bills. She also testified that they read the paper to her and, that she understood she had to sign the paper in order to get the $50, but she testified on cross-examination, in effect, that she did not understand when she signed the paper that she was settling any claim she might have against appellant on account of the death of her husband; that appellant's agents told her she had no claim and that they were making her a present, or gift, of the $50. We do not think this evidence sufficient to preclude an inference by the jury of a want of consideration for the signing of such release by Jane Bishop, the mother; but assuming, without deciding, that it was sufficient for such purpose, it fails to show such consideration for the signing by the daughter Mary Dills. This action is brought, and properly so, by the administratrix under §285 Burns 1914, Acts 1899 p. 405, and a release, to be a complete bar to recovery by such administratrix, should be signed by all, "the widow * * * and children, if any, or next of kin" for whose benefit the personal representative, at the time of the execution of such release, might have properly brought an action, and a want of consideration for

the signing of such release by either of such persons would be sufficient to prevent such release from being a complete bar to recovery in an action brought by such personal representative. The evidence shows that the promise of the $50 was to the mother and her signature was procured under such promise. The signature of the daughter was secured later. No promise was made to, or understanding had with her that she was to be paid anything. The evidence shows that she in fact received nothing. For these reasons we think the conclusion reached in the original opinion on this question is correct and, that there is evidence in the record which authorized the conclusion reached by the jury. The petition for rehearing is therefore overruled.

NOTE.—Reported in 103 N. E. 492; 105 N. E. 644. As to death by wrongful act and release of action therefor, see 70 Am. St. 669. As to servant's assumption of risk from latent danger or defect, see 17 L. R. A. (N. S.) 76. And for servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. As to whether servant may assume the risk of dangers created by the master's negligence generally, see 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215. As to the general question of the delegability of the master's duty as to place and appliances, see 54 L. R. A. 63. See, also, under (1) 2 Cyc. 989; (2) 2 Cyc. 987; (3, 4) 26 Cyc. 1397; (5) 26 Cyc. 1384; (6) 31 Cyc. 79; (7) 2 Cyc. 671; (8) 18 Cyc. 141; (9) 31 Cyc. 226; (10) 18 Cyc. 67; (11, 19) 3 Cyc. 348; (12) 26 Cyc. 1104, 1321; (13) 2 Cyc. 1015; (14, 15) 26 Cyc. 1491, 1517; (16) 38 Cyc. 1809; (17) 38 Cyc. 1511; (18) 31 Cyc. 358; (20) 34 Cyc. 1103; (21) 34 Cyc. 1048, 1080.